51 CCPA

**Application of Jan J. WENT.**
**Patent Appeal No. 7012.**

United States Court of Customs
and Patent Appeals.
Nov. 14, 1963.

Cushman, Darby & Cushman, Alvin Guttag, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

MARTIN, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1, 2, 3, 6 and 7, the only claims remaining of appellant's application serial No. 536,638 filed September 26, 1955 for PROCESS OF NUCLEAR FISSION. Serial No. 536,638 is stated to be a continuation-in-part of appellant's application serial No. 435,340 filed June 8, 1954.

Claim 1, representative of the appealed claims, reads:

"1. In a process for the establishment of a self-sustaining neutron chain fission reaction in a system comprising a nuclear fuel suspension of solid fissile material particles in a carrier liquid of low neutron capture cross section, which nuclear fuel suspension continuously circulates through a nuclear reactor wherein critical conditions prevail and through an external piping system including a heat exchanger, in which system non-critical conditions prevail, the improvement of applying a stable non-agglomerating nuclear fuel suspension in which suspension substantially all the suspended particles have a maximum diameter that is *smaller than 15μ* and continuously removing fission products from the nuclear fuel suspension by separating at least part of the carrier liquid from the suspension circulating through the external piping system, purifying the carrier liquid thus separated and resupplying the purified liquid to the circulating suspension." [Emphasis ours.]

Claims 2 and 3 are dependent on claim 1, claim 2 specifying that substantially all the suspended fissile material particles of claim 1 have a minimum diameter greater than $0.01\mu$ [1] while claim 3 limits the diameter of the suspended particles

1. $\mu$=micron= .001 millimeters.

of claim 1 to a mean effective diameter which is at least equal to 1 micron. Claim 6 recites that the nuclear fuel suspension of claim 1 comprises a suspension of uranium oxide in heavy water while claim 7 specifies the nuclear fuel suspension of claim 1 to be a suspension of enriched uranium oxide in common water.

Appellant's application describes an improvement in an old process which comprises establishing a self-sustaining neutron fission reaction in a system containing a nuclear fuel suspension of solid fissile material particles in a carrier liquid having a low neutron capture cross-section. The nuclear fuel suspension is continuously circulated in known fashion through the nuclear reactor and through an external piping system including a heat exchanger.

Appellant's improvement is directed to the utilization in such an old system of a nuclear fuel suspension wherein substantially all of the suspended particles have a maximum diameter that is *smaller* than 15 microns. It is alleged that, as a result of this particle size limitation, a highly efficient continuous removal of fission products produced during operation of the nuclear reactor is possible.

The references relied on by the examiner and the board are:

"Ohlinger et al.    2,743,225    April 24, 1956
  (filed August 27, 1946)

"Nuclear Engineering Part II Chemical Engineering Progress Symposium Series No. 12 (1954) Vol. 50, pages 120–126 (Went and De Bruyn)."

---

The Ohlinger et al. patent describes a nuclear reactor system in which a fuel suspension of uranim-containing material is dissolved or suspended in a liquid moderator such as heavy water and continuously circulated through a reactor wherein a self-sustaining nuclear reaction occurs, and an external system including a heat exchanger and a solids separator wherein heat energy is extracted and the fuel suspension purified.

The Went et al. publication describes a system and procedure similar to that set forth in the Ohlinger et al. patent.

The board, in sustaining the examiner's rejection of the claims as unpatentable over each of the Ohlinger et al. patent and the Went et al. publication, stated:

"As to Ohlinger et al., this patent discloses the process steps substantially as claimed. The sole question presented is whether the appealed claims distinguish over this patent in the limitations with respect to size of the suspended particles. The patent discloses that the suspension of the particles may be either a colloid or slurry and the Examiner has pointed out that where the suspension is in the colloid form, the size of particles ranges from 0.001 microns to 0.1 microns and thus Ohlinger et al. teach the use of particles within the maximum size limitation.

\* \* \* \* \* \*

"\* \* \* We can see no criticality in the more restricted limitation on the particle size of claims 2 and 3 in that they merely specify appellant's preferred size of particles and such therefore does not constitute a patentable distinction over the colloid particles of the patent. \* \* \*

\* \* \* \* \* \*

"The Went et al. paper, upon which the appealed claims were rejected, discloses that the diameter of the particles in the suspension should be smaller than 10 to 15 microns. It discloses the procedural

steps of the process of the appealed claim."

Appellant contends that he is entitled to both the June 8, 1954 filing date of his parent application serial No. 435,340 and to the June 12, 1953 parent application convention date to antedate the Went et al. publication[2] and that this reference accordingly is not a proper reference. The examiner, treating an issue of insufficiency of disclosure of the parent application as res judicata, held that appellant was not entitled to the benefit of the filing date of the parent application.[3]

The board sustained the examiner.

In urging reversal of the rejection of the claims on the Ohlinger et al. patent, appellant contends that the patentees use the term "colloid" in a loose sense as an alternative for the word "slurry" in regard to homogeneous reactors and that a slurry normally involves particles of much greater size than colloid particles. Appellant contends that even if Ohlinger et al. were conceded, arguendo, to show a colloidal solution[4] having heterogeneous particles within the range of 0.001 to 0.1 microns, there is no teaching of the nuclear fuel suspension of claim 2 in which substantially all of the suspended particles have a diameter greater than 0.01 microns and smaller than 15 microns. Appellant argues that claim 3 is even more removed from the Ohlinger et al. patent than claim 2. He states that claim 3 requires the mean effective diameter of the suspended particles of the nuclear fuel suspension be at least

equal to 1 micron and smaller than 15 microns and that since the Patent Office conceded the size of colloidal particles to range from 0.001 to 0.1 microns, that range is clearly outside of anything taught or suggested by Ohlinger et al.

With respect to the Went et al. publication, appellant argues that the examiner and board were in error in refusing to allow him to rely upon his parent application serial No. 435,340 and the parent application convention date the benefit of which was claimed under 35 U.S.C. 119 to overcome the Went et al. publication which, it is urged, has a disclosure no better than said parent application.

There appears to be no dispute that the references disclose the process steps substantially as claimed. Rather, the case involves the question whether the utilization of a nuclear fuel suspension wherein substantially all of the suspended particles are characterized by a specific size limitation would be obvious to a person having ordinary skill in the art.

*The rejection on the Ohlinger et al. patent.*

■ A careful analysis of the Ohlinger et al. patent convinces us that there is no error in the board's position as to claims 1, 6 and 7. A portion of the Ohlinger et al. patent reads:

"As stated, the present invention relates to a neutronic reaction system wherein the reactive composition is at least partially liquid. In homogeneous reactors of this type

---

2. The examiner in his answer stated that "According to the Preface in the Nuclear Engineering reference, the Went et al paper along with the other papers in the reference were presented at a congrss held at Ann Arbor, Michigan in June, 1954." In its decision the board stated "It appears * * * from the application for copyright registration of the Went et al. paper that the said paper was published on August 6, 1954. It further appears that two copies of the paper were received in the Copyright Office on September 15, 1954."

3. Appellant abandoned the parent application on October 20, 1955.

4. The claims are drawn to a stable non-agglomerating nuclear fuel suspension. In this application, appellant states:

By "stable suspension" there should be understood in the present specification and in the appertaining claims a dispersion of solid matter in a carrier liquid in which substantially no agglomeration of particles occurs. It should be understood, in this connection, that the occurrence of the phenomenon of settling, the absence of which is sometimes considered as a stability criterion for suspensions, is not to be excluded with regard to the nuclear fuel suspensions according to the invention.

the uranium-containing material is dissolved in a liquid moderator as, for example, solutions of $UO_2F_2$, and $UO_2SO_4$ in *heavy water* ($D_2O$); or the uranium-containing material is *suspended* within a moderator liquid in the form of a *colloid* or slurry. In heterogeneous reactors of the type under consideration, the uranium-containing material is aggregated in the form of rods or slugs supported within the moderator liquid.

"An object of the invention is to provide a system of the above described type  *  *  *

*     *     *     *     *     *

"Describing the invention in detail and referring first to Fig. 1, the system illustrated therein comprises a reactor tank or chamber 2 containing a body 4 of fluid reactive composition preferably in the form of a slurry or *colloid* of uranium-containing material such as $UO_2$, $UO_3$ or $U_3O_8$ and a liquid moderator such as deuterium oxide ($D_2O$) commonly known as *heavy water.  *  *  **" [Emphasis ours.]

Webster's New International Dictionary (2d ed. 1949) defines *colloid* as

"  *  *  *  Any substance in a state of fine subdivision or dispersion, with particles ranging between $10^{-5}$ and $10^{-7}$ cm. in diameter, as colloidal gold, lead, sulphur, etc.  *  *  *"

The examiner has stated that "The size of colloidal particles ranges from 0.001 microns to 0.1 microns as shown by standard chemical dictionaries." Appellant in his brief states:

"There is no dispute between applicant and the Patent Office as to what is the range of size of colloidal particles. In fact, the range set forth by the Patent Office is very close to that of Kirk-Othmer Encyclopedia of Chemical Technology, Vol. 4 (1949), page 224, which shows

the particle size range of colloid particles is from 0.2 microns to 3–5 milli-microns (i. e., 0.003–5 to 0.2 micron)."

We think it clear, in view of the size of colloid particles as defined by standard chemical dictionaries, that the patentees' statement that "uranium-containing material is suspended within a moderator liquid in the form of a colloid," as well as their description of the invention in detail, would suggest to a person having ordinary skill in the art of nuclear reactor systems the use in such a system of a suspension of fissile material in heavy water with substantially all the suspended particles having a maximum diameter that is *smaller* than 15 microns. Claim 7, dependent on claim 1, is drawn to a suspension of uranium oxide in common water. Heavy water is merely a known isotopic variety of common water.[5]

■     While we find the process of claim 1 obvious over the Ohlinger et al. patent, the processes of claims 2 and 3 do appear to be unobvious over that reference. Claim 2 requires that substantially all the suspended particles in the nuclear fuel suspension have a diameter greater than 0.01 microns and smaller than 15 microns. As to this feature, appellant states in his specification:

"When applying a nuclear fuel suspension according to the invention, those fissionable nuclei which are formed by neutron capture and subsequent $\beta$-emission, e. g., $Pu^{239}$ or $U^{233}$, should preferably not be allowed to leave the solid fuel particles and be detained in the carrier liquid. Therefore, there is preferably used, according to the invention, a nuclear fuel suspension in which substantially all the suspended particles have a minimum diameter that is greater than $0.01\mu$."

Claim 3 requires the mean effective diameter of the suspended particles in the nuclear fuel suspension be at least equal to 1 micron and smaller than 15 microns.

5.  Hackh's Chemical Dictionary 903 (3rd ed. 1944).

Regarding this feature, appellant's specification reads:

"The separation of the carrier liquid hereinbefore referred to may be carried out in any manner known in the pertinent art. However, it should be understood, that certain known manners of separation might be too cumbersome, e. g., as regards the time required for adequate separation, to be attractive for application in a continuous process as hereinbefore described.

"Therefore, it is preferred, according to the invention, to apply nuclear fuel suspensions in which the mean effective diameter of the solid fuel particles is equal to or greater than $1\mu$. It has appeared that from such suspensions, especially when a hydrocyclone thickener is applied, substantial amounts of carrier liquid may be easily separated in a relatively short time."

We think it clear that the above-quoted portions of appellant's specification indicate a criticality of the particle size recitations of claims 2 and 3 and that there is more than a difference in degree between [1] suspended particles having a minimum diameter that is greater than 0.01 microns and smaller than 15 microns (claim 2) or suspended particles having a mean effective diameter of at least equal to 1 micron and less than 15 microns (claim 3) and [2] suspended particles having a maximum diameter that is smaller than 15 microns. Certainly there is nothing in the Ohlinger et al. patent that would suggest limiting the patentees' colloidal suspension to the size limitation of claim 2. Moreover claim 3 which defines a mean effective diameter

particles size at least equal to 1 micron is excluded by Ohlinger et al.'s teaching of a colloidal suspension.[6] For these reasons we think that claims 2 and 3 are patentably distinguishable over the Ohlinger et al. patent.

*The rejection of claims 2 and 3 on the Went et al. publication.*

In describing reactors with suspensions of uranium oxide in heavy water, the authors state:

" * * * The mean free path of the fission products in uranium oxides is about 10 to $15\mu$. If the diameter of the oxide particles is smaller than this free path, each fission nucleus will leave the particle from which it originates."

We can find no further limitations as to the particle size of the uranium oxide in the publication. Moreover there is no suggestion in the publication that suspended particles having a minimum diameter that is greater than 0.01 microns would prevent fissionable nuclei, e. g. $Pu^{239}$ or $U^{233}$ from leaving the solid fuel particles or that suspended particles having a mean effective diameter of at least 1 micron would allow substantial amounts of carrier liquid to be easily separated in a relatively short time. Thus we do not think that claims 2 and 3 would be obvious in view of the Went et al. publication.

Since we find appellant's claims 2 and 3 unobvious in view of the Went et al. publication, we need not decide whether that publication is a proper reference.

For the foregoing reasons, the decision of the board is affirmed as to claims 1, 6 and 7 and is reversed as to claims 2 and 3.

Modified.

6. As noted earlier in the opinion, the examiner indicated that the size of colloid particles ranges from 0.001 microns to 0.1 microns as shown by standard chemical dictionaries.